IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

The Ability Center of
      Greater Toledo, *et al.*,                   Case No. 3:10CV446

           Plaintiff

     v.                             ORDER

Douglas E. Lumpkin,

           Defendant


Plaintiffs, The Ability Center of Greater Toledo (Ability Center), Kathy Davis, Tanya Kohlhorst, Norman Napier, Victoria Bigelow, Michael Bickford, Mark Sahadi, Jan Ward, Antwan Williams, and Andrew Rajner filed this suit against Douglas Lumpkin in his official capacity as Director of the Ohio Department of Job and Family Services (ODJFS). Pending is defendant's motion to dismiss. [Doc. 13]. An Ohio non-profit corporation providing services to disabled individuals, Ability Center brings this suit on its own behalf and on behalf of its constituents, among whom are the named plaintiffs.

For the reasons that follow, the motion shall be granted in part and denied in part.

### Background

Each of the nine individually-named plaintiffs applied for Medicaid for the disabled (MA-D) and in each case ODJFS failed to determine eligibility for services within ninety days. Plaintiffs claim that ODJFS has violated their statutory right—under 42 U.S.C. §§ 1396a(a)(8) and 1396a(a)(10)—to a timely determination of their Medicaid eligibility and a prompt payment to

1

eligible individuals; they sue to enforce that right under 42 U.S.C. § 1983. Plaintiffs also claim a violation of their constitutional rights under the Fourteenth Amendment and that the Supremacy Clause of the United States Constitution preempts ODJFS' actions. Finally, plaintiffs claim that they have been discriminated against based on their alleged disabilities.

Plaintiff Kathy Davis is a fifty-one year-old woman living in Paulding County. She applied for Medicaid on February 11, 2009. On February 3, 2010, ODJFS approved her application for a period from February 1, 2009 to February 1, 2012

Plaintiff Tanya Kohlhorst is a forty-three year-old woman living in Auglaize County. ODJFS denied Ms. Kohlort's Medicaid application based on a lack of disability on November 23, 2009. Ms. Kohlhorst was verbally informed of the denial on May 5, 2010. She attempted to request a hearing to challenge the denial of her application, but the Auglaize County Department of Job and Family Services (AuCDJFS) refused to let her do so, requiring her to file a new application.

Plaintiff Norman Napier is a fifty-six year-old man living in Allen County. Napier applied for Medicaid on December 29, 2008, and was approved on May 27, 2010.

Plaintiff Victoria Bigelow is a forty-six year-old woman living in Lucas County. Ms. Bigelow applied for Medicaid on October 27, 2008, and was approved on May 26, 2010.

Plaintiff Michael Bickford is a sixty-one year-old man living in Lucas County. Mr. Bickford applied for Medicaid on April 15, 2009, and was approved on April 23, 2010.

Plaintiff Mark Sahadi is a forty-nine year-old man living in Lucas County. Mr. Sahadi applied for Medicaid on September 1, 2009, and was approved on June 1, 2010.

Plaintiff Jan Ward is a sixty-one year-old man living in Lucas County. Mr. Ward applied for Medicaid on December 1, 2009, and was approved on May 25, 2010.

Plaintiff Antwan Williams is a twenty-eight year-old man living in Lucas County. Mr. Williams applied for Medicaid on March 30, 2009, and was approved on May 25, 2010.

Plaintiff Andrew Rajner is a sixty year-old man living in Lucas County. Mr. Rajner applied for Medicaid on February 18, 2009, and was denied on February 1, 2010. Notice of the denial was sent to Mr. Rajner on February 10, 2010. Mr. Rajner did not request a hearing to challenge the denial.

## Discussion

### I. Standard

Review of a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) requires a court to "accept as true all material factual allegations in the complaint." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Allegations in the complaint should be construed in favor of the pleader. *Id.* at 237.

A claim survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal citations omitted).

A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Iqbal, supra,* 129 S. Ct. at 1949 (citing *Twombly*, supra, 550 U.S. at 557) (internal quotation omitted).

I must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp*., 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, supra*, 550 U.S. at 555; *see also Iqbal*, *supra,* 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## II. Subject Matter Jurisdiction

Defendant contends that I should dismiss the complaint for lack of subject matter jurisdiction because ODJFS has already made determinations on each of the individual plaintiffs' Medicaid applications, thereby rendering their claims moot and leaving some plaintiffs without standing to bring a claim.

### A. Mootness

Under Article III, § 2 of the United States Constitution, a federal court only has jurisdiction over a live case or controversy. *E.g., Lewis v. Continental Bank Corp*., 494 U.S. 472, 477 (1990). The "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Id.* And "[p]ast exposure to illegal conduct does not in itself does not show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974).

ODJFS has approved the applications of plaintiffs Davis, Napier, Bigelow, Bickford, Sahadi, Ward and Williams. The agency has determined that plaintiffs Kohlhorst and Rajner are not disabled.[1] ODJFS argues that because it has processed the Medicaid applications of all nine individual plaintiffs and made a determination as to each, their claims and thus the case are moot.

---

[1] Kohlhorst has not received written notice of her denial and has been instructed to reapply.

4

Well-settled doctrine permits exceptions to the mootness rule under some circumstances. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 189 (2000) ("voluntary cessation" exception). Plaintiffs contend that defendant ignores two applicable exceptions to the mootness doctrine, as well as the ruling made by Judge Marbley in *Case v. Jones-Kelly*, No. 2:08-CV-1171, 2010 WL 99086 (S.D. Ohio Jan. 5, 2010), on the same issue, and that accordingly defendant's motion should be denied.

### 1. Capable of Repetition Yet Evading Review

A court will not dismiss a claim as moot if the injury is capable of repetition, yet evading review. *Weinstein v. Bradford*, 423 U.S. 147, 148-149 (1975); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 (1999).

In the absence of a certified class, the capable of repetition, yet evading review exception requires:  1) the challenged action was in duration too short to be fully litigated before its cessation or expiration; and 2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. *Weinstein*, *supra,* 423 U.S. at 149. "The party asserting that this exception applies bears the burden of establishing both prongs." *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) (collecting cases).

Plaintiffs therefore bear the burden of supporting their argument that, as in *Case v. Jones-Kelly*, there is a reasonable expectation that plaintiffs will be subjected to the same violations by ODJFS again in the future.

As in this case, the plaintiffs in *Case* waited longer than the maximum period allowed for their eligibility determinations. Each plaintiff had his or her application approved following commencement of the lawsuit. On defendant's motion for summary judgment, the court held that

5

either the ninety-day mandated maximum processing time or the actual average processing time of

258 days was sufficiently short to meet the first requirement of *Weinstein*. *Case, supra,* 2010 WL

99086 at *4. I agree.

Under the second element of this mootness exception, there generally must be a reasonable

expectation or a demonstrated probability that the same controversy will recur involving the same

complaining party. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

A reasonable expectation is more than a physical or theoretical possibility. *Murphy, supra*,

455 U.S. at 482. A reasonable expectation or a demonstrated probability can be shown by a

plaintiff's history. *See e.g., Honig v. Doe*, 484 U.S. 305, 320-321 (1988) (disabled student with

uncontrollable behavior was reasonably expected, based on personal history, to misbehave and again

be subject to challenged school policy); *see also Doe v. Calautti*, 592 F.2d 704, 707 (3d Cir. 1979)

(discharged psychiatric patient's suit challenging a state law limiting the duration of in-patient

hospitalization was not moot, because the patient's psychiatric history and repeated prior

hospitalizations created a reasonable expectation that he would again be admitted to the hospital).

Defendant notes that the court in *Case* undertook a fact-specific inquiry to determine that,

given

> the chronic nature of the Plaintiffs' conditions; their ability to improve through
> treatment and eventually be removed from Medicaid coverage, only to deteriorate
> and have to apply again; and their prior experience with the threat of removal from
> coverage, there is a 'reasonable expectation' that these Plaintiffs will be subject to
> the same action again[.]

*Case, supra,* 2010 WL 99086 at *4.

6

Defendant argues *Case* is distinguishable because here plaintiffs have not alleged any facts suggesting the agency will soon be disenrolling them from Medicaid, thereby necessitating later reapplication.

To determine whether there is a reasonable expectation or demonstrated probability that plaintiffs will have to reapply for Medicaid, it is necessary to analyze the position of each plaintiff. As explained below, plaintiffs Ward, Bickford, Napier, Bigelow and Sahadi have not demonstrated a probability of repetition, while plaintiffs Davis, Kohlhorst and Rajner have done so.

### i. Ward and Bickford

The Social Security Administration (SSA) determined that plaintiffs Ward and Bickford are disabled. Once the SSA determines that an applicant is disabled, he or she is unlikely to ever be subject to the disability determination process again.[2] The SSA determination binds the State; ODJFS conducts no independent disability determination. O.A.C. 5101:1-39-03; *see also Case, supra,* 2010 WL 99086 at *4 n.2 (finding that a plaintiff determined disabled by the SSA is unlikely to ever need to reapply for Medicaid, and there can be no reasonable expectation that he or she will be subject to the same contested action again).

As a result of the SSA determination, it is unlikely either will ever be required to go through the eligibility process again, and their claims are moot.

### ii. Davis

Plaintiff Kathy Davis was approved for Medicaid on February 3, 2010 for a period from February 1, 2009 to February 1, 2012. [Doc. 12 at 9]. This suggests that she is reasonably likely to

---

[2] Plaintiffs agree, stating that "it is critical to note that until a disabled individual is determined to be disabled by the Social Security Administration, he or she remains subject to the disability determination process." [Doc. 14 at 8].

7

reapply in 2012. Her claim is not moot.

### iii. Kohlhorst

Plaintiff Tanya Kohlhorst applied for Medicaid on May 26, 2009 and was denied on November 23, 2009. [Doc. 12 at 11-12]. She first received oral notice of this denial on May 5, 2010. She attempted to request a hearing to challenge the denial of her application, but the AuCDJFS refused to let her do so, instructing her to file a new application. Thus, there is a reasonable expectation that Kohlhorst will be required to reapply, and therefore her injury is capable of repetition.

### iv. Rajner

Plaintiff Andrew Rajner applied for MA-D on February 18, 2009. The agency denied his application on February 1, 2010. [Doc. 12 at 19-20; Doc. 14]. Plaintiffs assert that until the SSA determines that Rajner is disabled, he remains subject to the deficiencies in ODJFS' review and determination procedures. Given the alleged nature of his conditions and his financial limitations, there is a reasonable expectation that Rajner will choose to reapply for benefits and be subject to the same inaction in response.

### v. Napier, Bigelow, Sahadi and Williams

Having been approved for MA-D, plaintiffs Napier, Bigelow, Sahadi and Williams have not shown they are reasonably likely to lose their eligibility for Medicaid and thus will need to reapply. Therefore, the capable-of-repetition-yet-evading review exception to the mootness doctrine does not apply. As indicated below, however, their claims are not moot because each plaintiff was approved following being named as a plaintiff in this action, implicating the voluntary cessation of illegal conduct exception.

## 2. Voluntary Cessation

The second exception to the mootness doctrine is that a case will not be dismissed where a plaintiff's claim has been mooted by a defendant's voluntary cessation of allegedly improper behavior. *United States v. W. T. Grant Co.*, 345 U.S. 629 (1953); *e.g., Ammex, Inc. v. Cox*, 351 F.3d 697, 704 (6th Cir. 2003).

The voluntary cessation exception holds that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc., supra*, 528 U.S. at 189. But for this exception, "courts would be compelled to leave the defendant free to return to his old ways." *Id.* (internal citation omitted).

Voluntary conduct moots a case only in the rare instance where "subsequent events made it 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Jones v. City of Lakeland*, 224 F.3d 518, 529 (6th Cir. 2000) (en banc) (quoting *Friends of the Earth, Inc., supra*, 528 U.S. at 189). Whenever there is a risk that the defendant will "return to his old ways," the plaintiff continues to have a stake in the outcome—its interest in not continuing to be subjected to that risk. *Iron Arrow Honor Soc. v. Heckler,* 464 U.S. 67, 75 (1983) (Stevens, J., dissenting).

With this exception, the party asserting mootness has the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc., supra*, 528 U.S. at 189; *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 342 (6th Cir. 2007) (internal citation omitted).

Contrary to the defendant's contention, the Supreme Court's decision in *DeFunis v. Odegaard*, 416 U.S. 312 (1974), does not require a different result. In that case, an applicant claimed

9

he had been denied admission to law school in violation of his constitutional rights. The state trial court ordered his admission, and the school complied with that order. By the time the student's case reached the Supreme Court, he was in his final year of law school, and the school stipulated that he would be allowed to complete his studies regardless of the outcome of the case.

The Supreme Court held that the action was moot because the student "will never again be required to run the gantlet of the Law School's admission process, and so the question is certainly not 'capable of repetition' so far as he is concerned." *Id.* at 319. The Court stated that mootness in the case "depend[ed] not at all upon a 'voluntary cessation' of the admissions practices that were the subject of th[e] litigation." *Id.* at 318. The Court differentiated that situation from one wherein the issue of mootness arises from a unilateral change in the admission procedures of the law school. In the latter situation, the "voluntary cessation of the admission practices complained of could make this case moot only if it could be said with assurance 'that there is no reasonable expectation that the wrong will be repeated.'" *Id.* at 318 (citing *W. T. Grant Co., supra,* 345 U.S. at 633).

The defendant's burden is "increased by the fact that the voluntary cessation only appears to have occurred in response to the present litigation, which shows a greater likelihood that it could be resumed." *Northland Family Planning Clinic, Inc., supra*, 487 F.3d at 342-343. ODJFS approved the applications of six named plaintiffs—Bickford, Bigelow, Napier, Sahadi, Ward and Williams—shortly after they became plaintiffs. As the court noted in *Case*, "[m]erely taking prompt action in response to a federal complaint, after taking no action at all for . . . months, does not convince this Court that this behavior will not be repeated." 2010 WL 99086 at *5.

Defendant counters unconvincingly that the voluntary cessation exception makes no sense in the context of not acting on applications within a required time frame. Defendant does not cite any authority for this distinction between illegally acting and illegally failing to act. Courts have

indeed found that the voluntary cessation exception is applicable where there has been an impermissible pattern of delay. *See, e.g., Rosemere Neighborhood Ass'n v. United States EPA*, 581 F.3d 1169, 1172 (9th Cir. 2009) (finding voluntary cessation exception to mootness applied where nonprofit community organization moved to compel the EPA to process all the association's complaints filed within regulatory deadlines); *see also Case, supra*, 2010 WL 99086 at *5.

I find that defendant has met his burden of showing that neither Ward nor Bickford, having received an SSA disability determination, can reasonably be expected to reapply to the ODJFS.

With respect to Napier, Bigelow, Sahadi, and Williams, defendant asserts that they suffer from medical conditions so debilitating that it is not reasonable to believe that they will ever be well enough to go off Medicaid. Plaintiffs disagree, arguing that each remains subject to the disability determination process until the SSA determines him or her to be disabled. This disputed factual issue prevents determination of whether defendant has met the stringent test set forth by the Supreme Court. *See Friends of the Earth, Inc.*, *supra*, 528 U.S. at 189.[3]

Defendant argues that the plaintiffs who had their applications processed before their lawsuits began—Rajner, Davis and Kohlhorst—should not be included. The voluntary cessation doctrine does not apply when the challenged activity stops for reasons unrelated to litigation. *Wyo. Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1, 9 (D.D.C. 2001) (citing *Sze v. INS*, 153 F.3d 1005, 1008-09 (9th Cir. 1998)). However, I have already found the claims of these plaintiffs are not mooted under the capable of repetition yet avoiding review doctrine. *See* A.1.ii and iii, above.

**B. Standing**

---

[3] Defendant notes that the court in *Case* made a fact-specific inquiry into the particular illnesses of each plaintiff. *Case* was on a motion for summary judgment, not a motion to dismiss. *Case, supra* 2010 WL 99086.

Standing is the determination of whether a specific person is the proper party to bring a matter to the court for adjudication. The Supreme Court has declared that "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498 (1975).

Plaintiffs have the burden of showing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-562 (1992). However, at the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice. *Id*. Standing is determined as of when plaintiffs file their complaint. *Javitch v. Transamerica Occidental Life Ins. Co.*, 408 F. Supp.2d 531, 533 (N.D. Ohio 2006) (citing *Senter v. General Motors Corp.*, 532 F.2d 511, 518 (6th Cir.) cert. denied, 429 U.S. 870 (1976)).

The Supreme Court has identified three constitutional standing requirements which a plaintiff must allege:  1) he or she has suffered or imminently will suffer and injury; 2) the injury is fairly traceable to the defendant's conduct; and 3) a favorable federal court decision is likely to redress the injury. *E.g., Lujan, supra*, 504 U.S. at 560-561.

The Supreme Court has also identified three prudential standing principles which require a party to:  1) generally assert only his or her own rights, not claims of third parties; 2) not allege generalized grievances more suitable for legislative or executive resolution; 3) raise a claim within the zone of interest protected by the statute or constitutional provision in question. *See,* 15-101 *Moore's Federal Practice - Civil* § 101.51*; see also, E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984-985 (11th Cir. 1990) (party alleging standing must surmount all of these prudential considerations).

### 1. Standing of Davis, Kohlhorst, Napier and Rajner

At the time plaintiffs filed their suit, defendant alleges ODJFS had already processed the applications of Davis, Kohlhorst, Napier and Rajner. Two were found disabled, two were found not disabled. Defendant contends that all four lack constitutional standing because they did not have an actual or impending injury at the time of filing, nor do they have an have available remedy.

### *i. Remedy*

Defendant argues that there is no remedy available through 42 U.S.C. §1983 that would further benefit plaintiffs Kohlhorst, Napier, Davis and Rajner. Because ODJFS had determined the disability of each at the time of filing, defendant argues, the injury they allege has been remedied and the prospective relief plaintiffs request would not benefit them.[4] Thus, defendant contends that these four plaintiffs lack standing under the third prong of the *Lujan* analysis.

Here, plaintiffs seek prospective relief to bring ODJFS into compliance with federal law—namely, a prompt determination of eligibility and a prompt payment to eligible individuals to enable them to obtain the necessary medical services, as required by 42 U.S.C. §§ 1396a(a)(8) and 1396a(a)(10). *Westside Mothers v. Olszewski*, 454 F.3d 532, 540 (6th Cir. 2006) (citing 42 C.F.R. §§ 435.911, 435.930).

Plaintiffs allege that neither has occurred for any of the plaintiffs, including the four who defendant claims lack standing. I agree.

In short:  1) Davis's eligibility will have to processed again in February 2012; 2) Kohlhorst had not received written notice of her disability determination at the time of filing, and in fact has been instructed to begin a second application; 3) Napier had not received notice of determination

---

[4] Prospective injunctive relief is the only remedy plaintiffs may seek against a defendant in a 42 U.S.C. §1983 action. *See Edelman v. Jordan*, 415 U.S. 651 (1974).

at the time of filing; and 4) Rajner alleges that he is in fact disabled, and that defendant's failure to reasonably accommodate his disability has deprived him of the benefits of Medicaid.

### ii. Injury

To have standing, the "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983) (citations omitted).

Defendant argues that plaintiffs Kohlhorst, Napier and Davis lack standing to bring this case because they did not have an actual or imminent injury-in-fact. Defendant characterizes the plaintiffs' alleged injury as caused by ODJFS' failure to make a timely determination on their Medicaid applications. Because, as to the three plaintiffs, ODJFS had determined their eligibility before the filing of the complaint, it had, it argues, remedied any injury resulting from past delay. When a defendant has cured past wrongs by the time a plaintiff files the complaint, no injury-in-fact exists that is actual or imminent. *See, e.g.*, *Ailor v. City of Maynardsville*, 368 F.3d 587, 596 (6th Cir. 2004).

Plaintiffs contend that defendant's motion to dismiss ignores key components of their alleged injury-in-fact. They allege that all plaintiffs have not received a prompt determination of their eligibility, that those eligible have not received a prompt payment to enable them to obtain necessary medical services, and that Kohlhorst has not in fact received a determination of her disability.

### a. Davis

Plaintiff Davis has standing because her application, after pending for 357 days, has only been approved through February 1, 2012. Unlike the plaintiff in *City of Los Angeles, supra,* 461 U.S. 95, her injury is neither conjectural nor hypothetical. Though she has been approved for MA-D, she

remains subject to the same Medicaid disability determination process until the SSA determines that she is disabled.

Because of the delay and resultant lack of medical coverage, she additionally alleges difficulty receiving and paying for necessary medical care. She claims that, despite the approval of her application, she has unpaid medical bills for services that should have been covered by Medicaid. She will be subjected to the ODJFS process in the coming months, and she faces the very real probability that OJDFS will again fail to determine her status with reasonable promptness. Prospective relief will provide her with a remedy by preventing a similar delay next year.

### b. Kohlhorst

Plaintiff Kohlhorst has also alleged an injury-in-fact. She asserts that she had not, as of the time of filing, received written notification that her application was denied and of her right to request a hearing to contest the denial. Therefore, her injury was not remedied by the time the complaint was filed. Indeed, rather than permitting her to request a hearing, the AuCDJFS scheduled her for an appointment on June 16, 2010 to start a new application—suggesting that the agency has made no determination on her application.

Because of defendant's failure to make a timely determination as to Kohlhorst's eligibility for Medicaid, she remains in limbo—unable to get needed treatment and medication without the medical coverage to which she may be entitled. The prospect of a lengthy (and apparently on-going) disability determination process poses an imminent risk to her well-being. This is an injury-in-fact, and prospective relief will provide her with a remedy by curtailing the determination process.

### c. Napier

Plaintiff Napier received notice of denial of disability on March 9, 2010, seven days after the filing of the initial complaint. The agency voided the denial in May, 2010, and approved

Napier's application for MA-D retroactive to December, 2008. Due to defendant's failure to make a proper and timely determination as to MA-D eligibility, Napier was not able to get needed medical treatment and medications. He was suffering from an injury-in-fact at the time of filing.

### d. Rajner

ODJFS has submitted an affidavit stating that the agency determined that Rajner was not disabled on February 1, 2010, and that it sent him notice of the denial on February 10, 2010. Plaintiffs do not contest this in their opposition. Instead, plaintiffs allege that defendant discriminated against Rajner because he is disabled.

Plaintiffs assert that Kohlhorst and Rajner are in fact disabled, and that defendant's failure reasonably to accommodate their disability has deprived them of the benefits of Medicaid. Plaintiffs allege that defendant failed to either provide adequate assistance to Rajner to acquire information to make a disability determination or properly evaluate Rajner's disability according to the sequential evaluation process. Therefore, plaintiffs contend that the fact of Rajner's denial of benefits is evidence of defendant's failure to provide medical assistance with reasonable promptness.

As discussed below, I am denying defendant's motion to dismiss the discrimination claim, and therefore likewise find that plaintiffs have sufficiently alleged actual injury, not remedied, to show standing.

### 2. Ability Center Standing

Defendant contends that Ability Center lacks standing, both in its own right and on behalf of its constituents.

### i. In its Own Right

An organization may have standing to sue on its own behalf. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (holding that an organization's allegations of injury to

16

itself were sufficient, at the pleading stage, to afford the organization standing in its own capacity).

Defendant argues that Ability Center lacks standing because it has neither stated a viable claim for relief nor alleged specific injury to itself that would confer standing. Ability Center argues that because it sufficiently alleged that it has expended resources on behalf of constituents who have applied for Medicaid, it has standing to sue in its own right.

Defendant is correct that to be viable, a claim must do more than recite "an unadorned, the-defendant-unlawfully-harmed-me accusation" and that "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal, supra*, 129 S. Ct. at 1949. However, a claim survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

Here, Ability Center has alleged that it "offers a wide range of services and opportunities designed to assist people with disabilities in gaining, or maintaining, independence in everyday living," [Doc. 12, at 5]. It "has expended substantial organizational resources providing advocacy assistance to individuals seeking a timely determination of their disability status," and that "[i]f Defendant had not failed to comply with federal law, and instead made timely and appropriate disability determinations for pending Medicaid applicants  .   .   .  the Ability Center of Greater Toledo could and would devote these considerable resources to other purposes consistent with its mission." [Doc. 12, ¶ 12].

I find that this sufficiently states a claim upon which relief can be granted.

Defendant additionally argues that Ability Center lacks prudential standing to enforce 42 U.S.C. §1396a(a)(8) and 42 C.F.R. §435.911 through § 1983 because it, as a Medicaid provider, falls outside of the zone of interest of those laws. This argument is inapposite, as Ability Center has

17

repeatedly asserted that it is advocating for declarative and injunctive relief on behalf of its constituents, not as a Medicaid provider seeking reimbursement for services that have been provided. [Doc. 12 at ¶¶ 10,11].

Defendant cites no facts or case law to suggest that an association that works both as an advocate and Medicaid provider cannot be treated as one or the other for the purpose of finding standing. In fact, Ability Center has a history of successful advocacy on behalf of its constituents despite its activity as a Medicaid provider. *See Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d. 901, 907 (6th Cir. 2004). I see no reason why its advocacy in this case should be any different.

### ii. On Behalf of Its Constituents

Defendant argues that Ability Center does not meet the requirements of associational standing on behalf of its constituents.

An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires participation by individual members in the lawsuit. *Friends of the Earth, Inc., supra*, 528 U.S. at 181 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

Defendant contends that Ability Center cannot meet the third prong of the *Hunt* test because the unique facts and circumstances of each individual's Medicaid application require the participation of the individuals themselves. This third factor of the test is prudential where the relief sought is declaratory or injunctive. *See United Food & Commer. Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 557 (1996).

Defendant supports this standing argument by asserting that if Ability Center can represent

18

the interests of its "constituents" in this lawsuit, then there is no reason to have named plaintiffs. This argument turns logic on its head, as it merely restates the third requirement of the *Hunt* test. *See, e.g., Disabled Patriots of Am., Inc. v. Port Hospitality, LLC*, No. 6-2889, 2007 WL 3353524 at *3 (N.D. Ohio Nov. 8, 2007) (recognizing that an association representing the interests of its disabled members had standing to pursue a Title II Americans with Disabilities Act (ADA) lawsuit where one of its members also was a plaintiff in the lawsuit and had sufficiently alleged a "claim of harm").

As I noted in *Disabled Patriots of America v. Lane Toledo,* 325 F. Supp. 2d 837, 841 (N.D. Ohio 2004) (quoting *Warth, supra*, 422 U.S. at 515), "if in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." Similarly, here, if the defendant were to bring the ODJFS disability determination process into compliance with federal law, that clearly would benefit Ability Center's constituents.

While the facts of each individual constituent's disability claim may differ, the same flawed determination process affects all subject to it; relief would likewise benefit all those members.

### C. Whether §1396a(a)(8) Conveys a Privately Enforceable Right

Medicaid requires a determination of eligibility for MA-D and the provision of medical assistance to eligible applicants within ninety days of the application (the "reasonable promptness" requirement).

A federal statute establishes the reasonable promptness requirement. 42 U.S.C. §1396a(a)(8).[5]

---

[5] Section 1396a(a)(8) provides in relevant part:

Federal regulations define reasonable promptness as occurring within ninety days of application.[6] 42 C.F.R. §§ 435.911 and 435.930.

Defendant contends that plaintiffs cannot rely on §1396a(a)(8) under §1983 because §1396a(a)(8) does not create a private right of action for failure to process one's claim within a specific period of time.

Nor, according to defendant, can plaintiff rely on 42 C.F.R. §§ 435.911 and 435.930 because federal regulations alone cannot create rights enforceable through §1983. This is contrary to both Supreme Court and Sixth Circuit authority.

Whether the statute and its regulations provide a private right of action depends on whether: 1) the statute itself provides a privately enforceable right; and 2) the accompanying regulation is entitled to deference.

### 1. Whether § 1396(a)(8) Itself Provides a Privately Enforceable Right

Section 1983 provides a cause of action against state officials for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

To establish whether a federal statute confers rights enforceable by § 1983, a court must determine that: 1) Congress intended that the provision in question benefit the plaintiff; 2) the right

---

A State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals[.]

[6] 42 C.F.R. §§435.911 provides that the time "for determining eligibility . . . may not exceed . . . ninety days for applicants who apply for Medicaid on the basis of disability." In connection with this process, 20 C.F.R. §416.917 provides, "If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests. We will pay for these examinations."

is not vague and amorphous; and 3) that the right is couched in mandatory, rather than precatory, terms. *Blessing v. Freestone*, 520 U.S. 329, 340-341 (1997); *Gonzaga University v. Doe*, 536 U.S. 273, 282-283 (2002) (clarifying that only unambiguously conferred rights, as distinguished from mere benefits or interests, are enforceable under § 1983); *see also Westside Mothers, supra*, 454 F.3d at 542.

As the defendant's brief acknowledges, the Sixth Circuit in *Westside Mothers, supra*, 454 F.3d 532, held that §§ 1396(a)(8) and (a)(10) confer enforceable rights to individuals under 42 U.S.C. § 1983. Several other courts have held that applicants for Medicaid have a private right of action in federal court for a violation of the reasonable promptness requirement. For instance, the Fourth Circuit held that "the reasonable promptness provision in §1396a(a)(8) . . . gives rise to a right enforceable under §1983." As that Circuit also noted in *Doe v. Kidd*, 501 F. 3d 348, 356-357 (4th Cir. 2007), three other Circuits have engaged in similar analysis of § 1396a(a)(8) and reached the same conclusion. *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 183 (3rd Cir. 2004); *Bryson v. Shumway*, 308 F.3d 79, 88-89 (1st Cir. 2002); *Doe ex rel. Doe v. Chiles*, 136 F.3d 709, 714 (11th Cir. 1998)); *see also Bruggeman v. Blagojevich*, 324 F.3d 906, 910-11 (7th Cir. 2003) (reaching the merits of a claim under § 1396a(a)(8) without discussing the availability of a private right of action).

In light of such precedent, and given defendant's failure to cite any contrary authority, I recognize § 1396a(a)(8) conveys a privately enforceable right.

### 2. Whether the Accompanying Regulations Are Enforceable

The Supreme Court, in *Wright v. Roanoke Redevelopment & Housing Authority,* 479 U.S. 418, 430 (1987), held that where Congress had conferred upon plaintiffs a right by statute, accompanying regulations are entitled to deference as valid administrative interpretations of the

statute. The *Wright* Court located the alleged right in the statutory provision and then relied upon the implementing regulations to define and interpret that right. 479 U.S. at 430–432.

The Sixth Circuit has similarly found that "if the regulation simply effectuates the express mandates of the controlling statute, then the regulation may be enforced via the private cause of action available under that statute." *Ability Ctr. of Greater Toledo v. City of Sandusky,* 385 F.3d 901, 906 (6th Cir. 2004) (citing *Alexander v. Sandoval* 532 U.S. 275, 284 (2001)); *see also Harris v. Olszewski,* 442 F.3d 456, 465 (6th Cir. 2006).

Here, as in *Wright,* the regulation at issue merely defines the specific right that Congress conferred through the statute. *See id.* at 430 n.11, 431 (stating regulations "defin[ed] the statutory concept of 'rent.'").

The decision in *Sandoval, supra*, 532 U.S. at 284, does not command a different result. Defendant cites *Sandoval* for the proposition that federal regulations standing alone cannot create rights enforceable through 42 U.S.C. §1983. This is certainly so.

In *Sandoval* and subsequent cases the Supreme Court clarified that a regulation may invoke a private right of action that Congress created through statutory text, because "[a] Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well." *Harris, supra,* 442 F.3d at 465 (citing *Sandoval, supra*, 532 U.S. at 284).

Thus, defendant's argument that the ninety-day requirement is unenforceable because "[t]hat requirement appears nowhere in the text of the statute," is unavailing. Having found that the applicable statutes do provide for private enforcement, the interpretation that a "reasonable time" is less than "90 days" is also privately enforceable.

22

### 3. Whether 42 U.S.C. §§ 1396a(a)(8), (10) Apply To These Plaintiffs

Plaintiffs' second and third counts allege violations of federal law under 42 U.S.C. §1396a(a)(8) and §1396a(a)(10). Defendant acknowledges that the Sixth Circuit has held that these two statutes confer enforceable rights to individuals under 42 U.S.C. § 1983. *Westside Mothers, supra*, 454 F.3d 532. However, defendant argues that enforceable rights do not vest until applicants for Medicaid have been determined to be eligible.

Specifically, defendant contends that because plaintiffs here allege injuries occurring while they were applicants for medical assistance and not yet determined eligible for Medicaid, they cannot sue to enforce these rights.

This distinction between pre- and post-eligible Medicaid recipients is nowhere to be found in the law. In describing the scope of 42 U.S.C. §§ 1396a(a)(8) and 1396a(a)(10), the court in *Westside Mothers,* on which defendant heavily relies, stated: "what is required is a prompt determination of eligibility and a prompt payment to eligible individuals to enable them to obtain the necessary medical services." 454 F.3d at 540 (citing 42 C.F.R. §§ 435.911, 435.930).

As the plaintiffs point out, requiring a prompt determination of eligibility for individuals who ODJFS has already determined to be eligible would make no sense. Thus, the law requires states to process promptly the applications of all applicants, since it cannot know in advance which applicants will be eligible and which ones will not be eligible. *See, e.g., Case, supra*, 2010 WL 99086 (denying summary judgment where plaintiffs were required to wait longer than the maximum allowed ninety days for their eligibility determinations, and each plaintiff had his or her application approved in the weeks following commencement of this lawsuit.)

23

### III. Discrimination

In their amended complaint, plaintiffs allege that they and the class they represent are current and potential applicants for the MA-D program, and qualified individuals with disabilities within the meaning of 42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104. They contend that the lack of adequate reasonable accommodations for their disabilities, including, but not limited to, provisional eligibility for Medicaid, has a disparate impact on plaintiffs and the class they represent and makes it significantly more difficult for them to gain timely access to necessary healthcare as compared to other non-disabled individuals who have applied for Medicaid.

Defendant contends that plaintiffs' discrimination claims should be dismissed under Fed.R.Civ.P. 12(b)(6) because the allegations are not sufficient to support the claims.

Section 202 of the ADA prohibits discrimination against the disabled by public entities and is enforceable through private causes of action. *Barnes v. Gorman*, 536 U.S. 181, 184-185 (2002). Section 202 provides that:  "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Plaintiffs assert that they have stated a claim under Title II of the ADA on which relief can be granted. They argue that defendant is a qualifying public entity, plaintiffs are individuals with disabilities, and defendant is denying plaintiffs access to a public program for which they may be eligible.[7]

---

[7]  ODJFS is a "public entity" as defined in 42 U.S.C. 12131(1). A qualified individual is one who meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. 42 U.S.C. § 12131(2); *Sandison v. Michigan High Sch. Athletic Ass'n,* 64 F.3d 1026, 1036 (6th Cir. 1995).

Defendant argues that Kohlhorst and Rajner have been determined not disabled, and therefore do not qualify. For the purposes of this motion, I find that Kohlhorst and Rajner have alleged specific facts that, if accepted as true, would render them qualified individuals with

Plaintiffs state two alternative bases for their claim of discrimination by reason of their disability, either:  1) the defendant could have reasonably accommodated the disability, but refused to do so; or 2) a disparate impact theory. *McPherson v. Michigan High Sch. Ath. Ass'n*, 119 F.3d 453, 460 (6th Cir. 1997).

I find plaintiffs' reliance on a disparate impact theory unavailing. Plaintiffs allege that they and the class they represent have been treated differently than those Medicaid applicants whose eligibility is not based on a disability. Despite this allegation, plaintiffs have failed to make the barest of factual comparisons between the Medicaid application processes or statutorily imposed timelines for processing applications for disabled and non-disabled applicants.[8] Plaintiffs' complaint thus "tenders naked assertions devoid of further factual enhancement," and is insufficient. *Iqbal, supra,* 129 S. Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 557) (internal quotation omitted).

Plaintiffs' allegations that, due to untimely processing of applications, they, though eligible for MA-D, are unable to participate fully, suffice to state a claim. Such untimely processing, plaintiffs assert, has deprived plaintiffs of benefits to which they otherwise would be entitled. This, in turn, they contend constitutes a failure reasonably to accommodate their disabilities.

---

disabilities under the ADA, despite having been determined not to be disabled. [Doc. 12 at¶¶ 75-79 and ¶¶ 80-81].

[8] The entirety of the disparate impact claim in Plaintiffs' Second Amended Complaint is:

"[t]he lack of adequate reasonable accommodations, including, but not limited to, provisional eligibility for Medicaid, has a disparate impact on Plaintiffs and the class they represent. The failure of the Defendant to create reasonable accommodations makes it significantly more difficult for Plaintiffs and the class they represent to gain timely access to necessary healthcare as compared to other non-disabled individuals who have applied for Medicaid." [Doc. 12 at 24 ¶ 171].

25

A plaintiff need not allege either disparate treatment or disparate impact to state a reasonable accommodation claim. *See, e.g., Henrietta D. v. Bloomberg*, 331 F.3d 261, 276-77 (2d Cir. 2003).

Title II "requires that public entities make reasonable accommodations for disabled individuals so as not to deprive them of meaningful access to the benefits of the services such entities provide." *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d. 901, 907 (6th Cir. 2004); *see also Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (recognizing that "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion[.]"). As the Supreme Court held in *Alexander v. Choate*, 469 U.S. 287, 301 (1985), "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers."

When necessary to avoid discrimination on the basis of disability, a public entity shall, pursuant to 28 CFR § 35.130(b)(7), make reasonable modifications in policies, practices, or procedures. The entity need not make the accommodation, however, if it either "imposes undue financial and administrative burdens on a grantee, or requires a fundamental alteration in the nature of [the] program." *Sandison v. Michigan High Sch. Athletic Ass'n,* 64 F.3d 1026, 1034 (6th Cir. 1995) (quoting *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n.17 (1987)).

Defendant does not deny that ODJFS has not made a percentage of disability determinations within the required ninety-day time period, nor that some percentage of applicants are qualified for benefits. Defendant insists, however, that the provisional eligibility that plaintiffs propose as an accommodation is unreasonable and contrary to Ohio law.[9]

---

[9] Specifically, defendants cite the Ohio Administrative Code. This argument is without merit as the ADA provides protection against discriminatory state statutes and policies. *See, e.g.*, *Thrope v. Ohio*, 19 F. Supp. 2d 816 (S.D. Ohio 1998) (finding that Ohio's fee for permanent handicapped windshield placards, codified in Ohio Rev. Code Ann. § 4503.44, violated that ADA).

Further, defendant argues that the plaintiffs' proposed accommodations would be a fundamental alteration of the MA-D program.

Plaintiffs respond that their proposed accommodation does not constitute a fundamental alteration of the MA-D program. Defendant, according to plaintiffs, bases his contention about their demand for provisional eligibility on unsupported factual assumptions. They also assert that their approach fulfills the intent of the ADA.

In ADA cases, the plaintiff bears the burden of establishing the elements of the prima facie case, including—if needed—"the existence of a reasonable accommodation" that would enable him to participate in the program, service, or activity at issue. Once the plaintiff has done so, the burden then shifts to the state to show that the requested accommodation is not reasonable. 28 C.F.R. § 35.150(a)(3);[10] *Olmstead,* 527 U.S. at 604-06 (noting that a state has the burden of establishing a fundamental alteration defense); *see also Martin v. Taft*, 222 F. Supp. 2d 940, 972 (S.D. Ohio 2002).

Determining whether a modification or accommodation is reasonable always requires a fact- and context-specific inquiry. *Pierce v. County of Orange,* 526 F.3d 1190, 1217 (9th Cir. 2008). A

---

[10] Section 35.150(a)(3) further explains:

In those circumstances where personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with § 35.150(a) of this part would result in such alteration or burdens. The decision that compliance would result in such alteration or burdens must be made by the head of a public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity, and must be accompanied by a written statement of the reasons for reaching that conclusion. If an action would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services provided by the public entity.

27

motion to dismiss is therefore not the proper occasion for defendant's argument that the proposed modification is unduly burdensome. *Martin, supra,* 222 F. Supp. 2d at 972 ("[W]hether requested relief would entail a fundamental alteration is a question that cannot be answered in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); *see also Radaszewski v. Maram,* 383 F.3d 599, 614-15 (7th Cir. 2004) (holding that the cost-benefit analysis that must be undertaken to assess a fundamental alteration defense is not appropriately made at the pleading stage); *Nelson v. Milwaukee County,* No. 04-0193, 2006 WL 290510 at *7 (E.D. Wis. Feb. 7, 2006) ("[T]he determination of whether plaintiffs' requested alterations would fundamentally alter [defendant] requires a more fact intensive inquiry than is appropriate on a motion to dismiss.").

I am satisfied that plaintiffs properly allege that they have been denied meaningful access to MA-D benefits and that a reasonable accommodation may exist. Defendant's dispute, as expressed in his motion to dismiss, as to the reasonableness of the proposed accommodation (*i.e.*, that it "would be incredibly difficult and would take vast resources," [Doc. 15 at 8-9], is premature. The defendant's motion to dismiss the discrimination claim is therefore denied.

## IV. Supremacy Clause

Plaintiffs allege that defendant has failed in his duty to provide them with access to medical assistance with reasonable promptness. This failure on the defendant's part, plaintiffs contend, leaves unfulfilled the overarching goals of the Medicaid program and frustrates its purposes. Defendant's actions are therefore, according to the complaint, preempted by the Supremacy Clause of the United States Constitution, Article VI.

Specifically, plaintiffs claim that defendant's tardy determinations deprive them of their right to: 1) benefits with reasonable promptness and without any delay under 42 U.S.C. § 1396a(a)(8) and the implementing regulations, 42 C.F.R. § 435.911 (mandating eligibility determinations within

ninety days), and 42 C.F.R. § 435.930 (entitlement to benefits without any delay); and 2) a system that ensures that medical assistance will be available, including at least the care and services listed in ¶¶ (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

The parties dispute whether, to state a Supremacy Clause claim, plaintiffs must identify an Ohio law in conflict with a federal law. Defendant asserts that because every requirement for the Medicaid for the Disabled program mandated by federal law is similarly found in Ohio law, this case does not present a Supremacy Clause issue. Plaintiffs argue that there need not be a direct conflict for preemption to apply.

The Supremacy Clause invalidates state laws that "interfere with, or are contrary to," federal law. U.S. Const. Art. VI, cl. 2; *e.g., Hillsborough County v. Automated Med. Labs, Inc*., 471 U.S. 707, 712-13 (1985). A conflict between a state and federal law arises when "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *see also PG & E Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983*); Lankford v. Sherman*, 451 F.3d 496, 510 (8th Cir. 2006).

In light of this precedent, plaintiffs are correct that state and federal laws need not be diametrically or even facially opposed for federal law to preempt a conflicting state law.

Indeed, Federal Regulations may preempt established policies concerning the application of the state statutes that conflict with federal mandates. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 526 (1977) (noting that courts must "consider the relationship between the state and federal laws as they are interpreted and applied, not merely as they are written.").

29

For example, in *Livadas v. Bradshaw*, 512 U.S. 107, 118 (1994), the Supreme Court held that an agency policy that interprets state law in a manner that conflicts with federal law is itself preempted, even if the state law it is interpreting is not in conflict.[11]

In that case, a discharged employee brought a suit under § 1983 when the California State Commissioner of Labor refused to enforce her claim for back pay. The Commissioner interpreted the California Labor Code to prohibit enforcement in cases where there was a collective bargaining agreement with an arbitration clause. *Id*. at 112. The Supreme Court held found "the Commissioner's policy to have such direct and detrimental effects on the federal statutory rights of employees [under the National Labor Relations Act] that it must be pre-empted." *Id*. at 135. The Commission articulated its reasoning in an apparently standard form letter to the discharged employee. *Id*. at 102-103.

Though plaintiffs in this case do not have a letter documenting defendant's detrimental policy of tardy determinations, this is not fatal to their claim. It is well established that an unwritten policy of inaction can have the same effect as positive law in influencing the behavior of state actors. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (noting that in the context of § 1983 municipal liability claims, unwritten yet "persistent and widespread . . . practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."); *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does

---

[11] In *Livadas*, the defendant made essentially the argument as defendant does here. The Supreme Court responded that "the assertion that the nonenforcement policy must be valid because [the state statute] is consistent with federal law is premised on irrelevant relationships and leads to the wrong question: Pre-emption analysis turns on the policy's actual content and its real effect on federal rights, not on whether [the state statute] is valid under the Federal Constitution or whether the policy is, as a matter of state law, a proper interpretation of [state law]. 512 U.S. at 107.

nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.").

Plaintiffs allege that the defendant's disability determination scheme as set forth in the Ohio Administrative Code "is so cumbersome and sets up so many barriers to access for the disabled individuals it is supposed to help, that its existence and operation actually conflict with federal Medicaid requirements." [Doc. 14 at 36]. Defendant's apparently systematic and pervasive failure to make disability determinations within ninety days and corresponding failure to ensure the availability of medical assistance appears to be the result of policy-based under-enforcement, and as such is strongly in disaccord with the federal regime. The defendant has, through his conduct implemented an implicit, albeit unwritten policy (but one as effective as if he had issued a formal proclamation) that directly contravenes federal law. That law, in turn, is pre-emptive *vis-a-vis* the defendant's *de facto* policy.

Defendants motion to dismiss this claim is denied.

### V. Due Process

Applicants to Medicaid have a property interest in the benefits for which they hope to qualify and are, therefore, entitled to the due process protections imposed by the federal Medicaid statute and regulations and *Goldberg v. Kelly*, 397 U.S. 254 (1970). *See Hamby v. Neel,* 368 F.3d 549, 559 (6th Cir. 2004); *see also Mathews v. Eldridge*, 424 U.S. 319 (1976). Plaintiffs allege that Ohio's Medicaid notice procedure and fair hearing system deprived them of that due process.

Under federal law, when a state agency denies or fails to process a claim for Medicaid assistance reasonably promptly, the state must provide an opportunity for a fair hearing. U.S.C. § 1396a(a)(3). Federal regulations require that the state's hearing system meet the due process standards set forth in *Goldberg, supra,* and the additional standards specified in 42 C.F.R. Part 431.

31

42 C.F.R § 431.205(d); *Fishman v. Daines*, No. 09-5248, 2010 WL 4038781 (E.D.N.Y. Oct. 15, 2010).

Plaintiffs claim a deprivation of their Fourteenth Amendment right to adequate notice and opportunity for a hearing to contest denial of their applications for Medicaid. Specifically, plaintiffs claim that they are entitled to a hearing when an application for benefits has been "denied, acted upon erroneously, or not acted upon with reasonable promptness." O.A.C. 5101:6-3-01(A)(1).[12] Plaintiffs argue that their right to a hearing, contrary *Goldberg, supra,* 397 U.S. at 267, is not "meaningful" because defendant does not provide notice of that right.

Medicaid plans must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3). The statute's attendant regulations require the state agency to notify applicants of the right to a hearing and the method of obtaining one when the applicant first applies to Medicaid, *and* when the agency takes any action affecting the applicant's claim. 42 C.F.R. § 431.206;[13] *Crawley v. Ahmed*, No. 08-14040, 2009 WL 1384147 (E.D. Mich. May 14, 2009).

In other words, regulations implementing 42 U.S.C. § 1396a require state Medicaid agencies to "inform every recipient in writing  .  .  .  of his right to a hearing  .  .  .  at the time of any action affecting his or her claim." *Ladd v Thomas,* 962 F Supp 284, 289 (D. Conn. 1997) (requiring notice

---

[12] *See also* 42 C.F.R. § 435.912 (the agency must send each applicant a written notice of the agency's decision on his application, and, if eligibility is denied, the reasons for the action, the specific regulation supporting the action, and an explanation of his or her right to request a hearing).

[13] The regulations also govern the specific contents of the notice, which must include:  (1) a statement of the actions being taken, (2) reasons for the intended actions, (3) specific regulations that support or require the intended action, and (4) an explanation of the right to a hearing, and under what circumstances Medicaid benefits will continue during the pendency of the requested hearing. 42 C.F.R. § 431.210. This notice must, unless an exception applies, be mailed "at least 10 days before the date of action." § 431.211.

of right to a hearing when effectively reducing benefits by failing to act on a request for prior authorization for durable medical equipment with reasonable promptness).

Defendant requests that I dismiss this claim because plaintiffs have been afforded hearing rights. In making this claim, defendant asserts that named plaintiffs Davis, Napier, and Bigelow each received deferrals notifying them that their applications were still pending and a determination would be made when ODJFS received the necessary evidence. Each of those four plaintiffs requested and had a hearing. Defendant argues that all the plaintiffs could have likewise requested a hearing, and that this satisfies due process.

Defendant does not address plaintiffs Williams, or Rajner's allegation that they never received notice of the deferral of their applications or their right to a hearing for failure to determine their eligibility with reasonable promptness, or notice that they had been denied eligibility. Plaintiff Kohlhorst alleges that she did not receive a timely notice of her denial and Auglaize County JFS personnel denied her request for a hearing. Therefore, with respect to Kohlhorst, Williams, Rajner, defendant's motion is denied.

The crux of plaintiffs' argument is that due process requires notice of the right to obtain a hearing not only when the state agency takes action which affects the applicant's claim, but also when the state agency so delays any action on an applicant's process that the applicant's claim is effectively denied.

Plaintiffs have sufficiently pled a due process violation. As defendant has chosen not to address plaintiffs' argument that due process requires more notice than the agency currently provides, I deny defendant's motion to dismiss the due process claim.

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT Defendant's motion to dismiss be, and it hereby is

1. GRANTED with regard to plaintiffs Ward and Bickford to the extent their claims are

moot; and

2. Otherwise DENIED.

So ordered.


s/James G. Carr
Sr. U.S. District Judge